L. EDGAR HUMMEL, as Superintendent of the EDWARD J. MEYER MEMORIAL HOSPITAL, Plaintiff, *v.* CHRISTOPHER V. SIMRIL, Defendant.

City Court of Buffalo, February 16, 1967.

*Norman Stiller, County Attorney (Joseph J. Roetter* of counsel), for plaintiff. *William J. Cunningham, Jr.,* for defendant.

ANN T. MIKOLL, J. The plaintiff is suing the defendant pursuant to article 3 of the Social Welfare Law, article 6 of the General Municipal Law, and article 5 of the Mental Hygiene Law for hospitalization given defendant's son.

The facts adduced at the trial indicate that Christopher Simril, the defendant's son, was sent to the E. J. Meyer Memorial Hospital on the order of Justice of the Peace ROBERT A. SMOLKA, on October 20, 1964. Defendant's son was charged before the Justice of the Peace with a violation of section 1046 of the Penal Law. Judge SMOLKA testified that the commitment was made pursuant to section 870 of the Code of Criminal Procedure and subdivision 5 of section 81 of the Mental Hygiene Law.

The commitment was made over the objection of Christopher Simril's attorney. Christopher spent two weeks at the hospital. He was then to be returned to the court and jail custody because of his failure to answer questions of the doctors at the hospital on the advice of his attorney. Judge SMOLKA notified Christopher's counsel that he would be returned to court custody. Christopher Simril's attorney requested that Christopher remain in the hospital and assured the Judge that he would co-operate and answer questions of hospital authorities henceforth.

It was stipulated by counsel that Christopher Simril spent a total of 46 days in the hospital and the charge for the stay in the hospital is $1,804.

The proof further indicated that the defendant in this action is the father of Christopher Simril. The facts indicate that in 1964 and 1965, when the hospital confinement of defendant's

son took place, the defendant had gross incomes of $23,697 and $27,568.06, respectively. He also owned a piece of real property on Harril Hill Road in Williamsville, New York. What defendant's financial status was as of the day of trial was not indicated by either side.

Section 870 of the Code of Criminal Procedure provides for commitment in the discretion of the Magistrate of a person charged with a crime, when not under indictment, when there is reasonable ground to believe that a defendant is in such a state of insanity that he is incapable of understanding the charge or proceeding or of making his defense. Section 662-e of the Code of Criminal Procedure provides that the cost of the examination shall, when approved by the court, be a charge on the county in which the defendant is being tried. The county may recover such costs from the estate of the defendant or from a relative legally responsible for his support. The provisions of this section are deemed not superseded by any provision of the Mental Hygiene Law or other statute unless specifically so provided.

Subdivision 5 of section 81 of the Mental Hygiene Law as it read in 1954 related to the civil confinement of a mentally ill person. The confinement of Christopher Simril could not, then, be pursuant to this section. Confinement was pursuant to section 870 of the Code of Criminal Procedure since this section deals with examinations of persons charged with a crime but not under indictment. Such was the case here.

Section 101 of the Social Welfare Law provided that the parent of a recipient of public assistance or care shall, if of sufficient ability, be responsible for the support of such person. This section makes a father responsible for care given his son if he is of sufficient ability to pay.

The question of legal liability for the care given Christopher Simril presents several interesting issues. The court regrets that neither side submitted memos on the legal points raised at the trial so that the court might have the benefit of their respective views. The first issue to be resolved is whether the commitment of Christopher Simril to the hospital was done in accordance with the Code of Criminal Procedure. Section 870 permits a commitment where there is reasonable ground to believe that defendant is in a state of insanity. The right of a Magistrate to commit is not an arbitrary one or one to be adopted merely because of the nature of the charge. (*People ex rel. Apicella* v. *Superintendent of Kings County Hosp.*, 173 Misc. 642 [1940]; *People ex rel. Schildhaus* v. *Warden of City Prison*, 235 N. Y. S. 2d 531 [1962].) The court record of Christopher Simril's com-

mitment is bereft of a basis for action under the statute. The commitment was, in fact, done over the objection of the attorney for Christopher Simril. The only reason stated at the proceeding for the commitment of the defendant was, in the words of Judge SMOLKA, as follows: " The first thing, Mr. Cunningham I would like to point out that it is the intention of the court to commit this defendant to Meyer Memorial Hospital for observation, both as to his mental and physical health, and secondly for the purpose of securing the person of the defendant during the next few hours until the defendant fully realizes the results of his acts that occurred today,— and once I have committed the defendant, I will not be able to remove him from the hospital until the hospital advises me that he will be released ".

The reason for the defendant's commitment seems to be for the purpose of securing his person in case the horror of his actions causes an emotional reaction. This is not a valid reason for commitment under section 870 of the Code of Criminal Procedure.

Under these circumstances, can a parent be held responsible for care given his son in a hospital? The error of the Magistrate and the resultant costs of hospitalization, can they be laid at the feet of the parent or the recipient of the custodial care? Does the ultimate consent of the son's attorney to the continued commitment change the issue as to the legal obligation for care? I have found no cases in point on these questions.

It is the opinion of this court that there is no legal obligation on the father's part to pay for care provided defendant's son. The county is responsible for the error in judgment of its agent, the presiding Magistrate. The county cannot now seek recompense from the father for the custodial care given him in the hospital.

The ultimate consent of the son's attorney to the hospital confinement does not change the legal responsibility of this defendant. The attorney was not shown to be empowered to commit this defendant for the costs of the son's stay in the hospital. I feel that the plaintiff has failed to prove his right to recover from this defendant; wherefore,

Judgment is granted in favor of the defendant.